# EXHIBIT 1

Electronically Served
[illegible]0 AM

THE STATE OF TEXAS
CIVIL CITATION
CASE NO.493-08658-2026

Pro Silver Star, Ltd. vs. My Chemical Romance; and Live Nation Entertainment, Inc.

In the 493rd District Court

Of Collin County, Texas

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."

TO: Live Nation Entertainment, Inc.
Registered Agent Texas Corporate Creations Network Inc
2595 N Dallas Pkwy Suite 350
Frisco TX 75034, Defendant

AP 10/27/2026
PSC|206

GREETINGS: You are commanded to appear by filing a written answer to **Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and a Temporary Injunction** at or before ten o'clock A.M. on the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 493rd District Court of Collin County, Texas at the Courthouse of said County in McKinney, Texas.

Said Plaintiff's Petition was filed in said court, by Edwin Buffmire 2323 Ross Avenue Suite 600 Dallas TX 75201 (Attorney for Plaintiff or Plaintiffs), on the 26th day of October, 2026 in this case, numbered 493-08658-2026 on the docket of said court.

The natures of Plaintiff's demand is fully shown by a true and correct copy of **Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and a Temporary Injunction** accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at McKinney, Texas, on this the 26th day of October, 2026.

ATTEST: Michael Gould, District Clerk
Collin County, Texas
Collin County Courthouse
2100 Bloomdale Road
McKinney, Texas 75071
972-548-4320, Metro 972-424-1460 ext. 4320

By: Robin R. Markey, Deputy
Robin Markey

**The law prohibits the Judge and the clerks from giving legal advice. Any questions you have should be directed to an attorney.**

Electronically Served
10/26/2026 9:[illegible]0 AM

## SHERIFF'S RETURN

Came to hand on the ______ day of ______________, 20____, at _______o'clock _____M., and executed

in __________________ County, Texas, by delivering to the within named Respondent/Defendant, to-wit:

____________________ at ________o'clock___M., on the _____ day of ____________, 20_____,

____________________ at ________o'clock___M., on the _____ day of ____________, 20_____,

____________________ at ________o'clock___M., on the _____ day of ____________, 20_____,

each, in person, a true copy of this instrument with a true and correct copy of the document attached thereto having first endorsed on such copy of said instrument the date of delivery.

( ) Not executed. The diligence used in finding defendant being ____________________________________

______________________________________________________________________________

( ) Information received as to the whereabouts of defendant being ________________________________

______________________________________________________________________________

Total Fees ..............$_____________________

__________________________________________ Sheriff/Constable/District Clerk

______________County, Texas

By ______________________________, Deputy

**Service by Rule 106 TRC if directed by attached Court Order

## VERIFICATION OF RETURN (IF NOT SERVED BY PEACE OFFICER)

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary Public, this _________ day of

_____________________________________, 20________.

Filed: 10/26/2026 8:19 AM
Michael Gould
District Clerk
Collin County, Texas
By Robin Markey Deputy
Envelope ID: 121625118

CAUSE NO. 493-08658-2026

| | | |
|---|---|---|
| **PRO SILVER STAR, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | § | |
| v. | § | **COLLIN COUNTY, TEXAS** |
| **MY CHEMICAL ROMANCE; and LIVE NATION ENTERTAINMENT, INC.,** | § | |
| **Defendants.** | § | **____ JUDICIAL DISTRICT** |

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND A TEMPORARY INJUNCTION**

Plaintiff Pro Silver Star, Ltd. ("Silver Star" or "Plaintiff"), the owner of the Dallas Cowboys Cheerleaders ("DCC") brand and its famous cheerleading uniform, files this Verified Petition and Application for a Temporary Restraining Order and Temporary Injunction against Defendants My Chemical Romance ("MCR") and Live Nation Entertainment, Inc. ("Live Nation") (collectively, "Defendants"), to stop them from infringing DCC's signature cheerleading uniform in a manner that causes confusion, trades off of Silver Star's decades of goodwill, and degrades the DCC brand. In support thereof, Silver Star respectfully states as follows:

## INTRODUCTION

1. For over half a century, the Dallas Cowboys Cheerleaders uniform (the "DCC Uniform") has been an instantly recognizable symbol of one of the most famous brands in American entertainment. That recognition is no accident. Silver Star built it through decades of investment and has protected it just as long by regularly monitoring and policing unauthorized uses of the DCC Uniform. As a result of Silver Star's efforts, federal courts, including the Second

and Fifth Circuits, have held that the DCC Uniform is protectable trade dress that no one may use without DCC's permission.

2. On October 21, 2026, Defendants staged *The Black Parade*, a theatrical concert production set in a fictional dictatorship and featuring pyrotechnics and armed conflict. As part of that production, female performers took to the stage in the DCC Uniform and then armed themselves with rifles in a staged firefight, only to be depicted being shot. Defendants repeated this performance on October 23, 2026. Audience members at both shows and online commentators understandably believed that the performers were the real Dallas Cowboys Cheerleaders and said so in social media posts that continue to circulate.

3. Silver Star is not litigious, and it takes no issue with MCR's music, its artistic ambitions, or any message Defendants seek to convey. Silver Star does not ask Defendants to change their setlist, narrative, politics, choreography, or even their decision to put gun-toting performers on stage. Silver Star asks only that those performers not wear the DCC Uniform while doing it. The universe of alternative costume designs is effectively unlimited.

4. Upon learning of the impermissible use of the DCC Uniform and the confusion it was causing, Silver Star immediately sent a cease-and-desist letter to Defendants, among others. On October 23, 2026, prior to Defendants' concert that same evening, Silver Star provided Defendants and their representatives with a copy of a Petition and Application for a Temporary Restraning Order and Temporary Injunction. But Defendants did not stop the infringing use of the DCC Uniform. Their actions threaten ongoing and irreparable harm to the reputation and goodwill Silver Star has cultivated in the DCC brand. Silver Star thus is left with no choice but to bring this action to protect itself.

**DISCOVERY CONTROL PLAN**

5. Silver Star intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4 and affirmatively pleads this suit is not governed by the expedited actions process in Texas Rule of Civil Procedure 169, including because Silver Star seeks injunctive relief.

**RULE 47 STATEMENT**

6. Silver Star affirmatively pleads, pursuant to Texas Rule of Civil Procedure 47(b), that the damages sought are within the jurisdictional limits of this Court. Silver Star further pleads, pursuant to Texas Rule of Civil Procedure 47(c) and (d), that it seeks non-monetary relief and all other relief to which it is justly entitled.

**PARTIES**

7. Plaintiff Pro Silver Star, Ltd. is a Texas limited partnership with its principal place of business in Frisco, Texas. Pro Silver Star, Ltd. owns the Dallas Cowboys Cheerleaders brand, uniform, and associated trademarks and trade dress.

8. Defendant My Chemical Romance ("MCR") is a nationally touring rock band whose members are Gerard Way, Ray Toro, Frank Iero, and Mikey Way. As part of the same Black Parade 2026 tour at issue here, MCR performed at the Alamodome in San Antonio, Texas, on September 12, 2026. In 2025, MCR performed at Globe Life Field in Arlington, Texas, as part of the Black Parade Stadium Tour. MCR may be served through the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service under Texas Civil Practice and Remedies Code §§ 17.044 and 17.045, with the Secretary to forward process to 12 W 37th St. Fl 10 New York, NY 10018, or wherever MCR may be found.

9. Defendant Live Nation Entertainment, Inc. is a Delaware corporation with its principal place of business at 9348 Civic Center Dr, Beverly Hills, California 90210. On information and belief, Live Nation promoted, produced, and/or ticketed *The Black Parade* tour

performances, including those at the Hollywood Bowl. Live Nation may be served through its registered agent in Texas, Corporate Creations Network Inc., 2595 N Dallas Pkwy, Suite 350, Frisco, Texas 75034.

10. Silver Star requests that citation issue for service on each Defendant.

## JURISDICTION AND VENUE

***Subject Matter Jurisdiction***

11. This Court has subject-matter jurisdiction because the amount in controversy exceeds the Court's minimum jurisdictional requirements and because Silver Star seeks injunctive relief. Tex. Const. art. V, § 8; Tex. Gov't Code § 24.007. State courts have concurrent jurisdiction over claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; Congress has made federal jurisdiction exclusive only for patent, plant-variety-protection, and copyright claims. 28 U.S.C. § 1338(a). Furthermore, under the Lanham Act, this Court has the jurisdiction and authority to issue and enforce nation-wide injunctions, including temporary restraining orders, in instances of infringement and dilution, such as here. 15 U.S.C. §§ 1116 & 1125(c)(1).

***Personal Jurisdiction***

12. This Court has general personal jurisdiction over Live Nation and specific personal jurisdiction over each Defendant under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with due process. Defendants purposefully directed their conduct at Texas and at a Texas-based brand. Silver Star is headquartered in Collin County, Texas; the DCC Uniform is inseparable in the public mind from Dallas and the Dallas Cowboys; and Defendants knowingly appropriated that Dallas-based brand and its goodwill, such that the injury—loss of control over DCC's reputation and tarnishment of its goodwill—is felt most acutely in Texas, where DCC's principal business and its audience are centered.

13. Live Nation is subject to general jurisdiction in Texas because its affiliations with Texas are so continuous and systematic as to render it essentially at home here. Live Nation is registered to do business in Texas and maintains a registered agent for service of process in Frisco, Texas. *See supra* ¶ 9. Live Nation owns, operates, or books venues across Texas, including the Dos Equis Pavilion in Dallas. And through its Ticketmaster business, Live Nation sells tickets to live events throughout Texas every year, including the tickets to the Hollywood Bowl performances at issue.[1]

14. MCR likewise purposefully availed itself of Texas. It brought the same Black Parade 2026 tour to Texas, performing at the Alamodome in San Antonio on September 12, 2026. *See supra* ¶ 8. MCR also marketed its San Antonio performance to Texas residents on its website and Instagram account.[2] In 2025, MCR performed at Globe Life Field in Arlington and advertised to Texas residents on its Instagram account in advance of the performance.[3] On information and belief, MCR sells tickets, merchandise, and recordings to Texas residents, including through Live Nation and Ticketmaster.

---

[1] *More Information*, Visit Fort Worth, https://www.fortworth.com/fwmf/more-information/ (last visited Oct. 23, 2026) (describing Live Nation Entertainment as comprised of Ticketmaster, Live Nation Concerts, and Live Nation Sponsorship, and referring to "select Live Nation venues, including the Dos Equis Pavilion in Dallas, TX"); Live Nation Ent., Inc., Annual Report (Form 10-K) (fiscal year 2011), https://www.sec.gov/Archives/edgar/data/0001335258/000119312512075895/d277780d10k.htm (listing Dallas Fort Worth amphitheater); Liberty Dunworth, *Watch My Chemical Romance Bring Out 'Dallas Cowboys Cheerleaders' for 'Teenagers' at Hollywood Bowl*, NME (Oct. 23, 2026), https://www.nme.com/news/music/watch-my-chemical-romance-bring-out-fake-dallas-cowboys-cheerleaders-hollywood-bowl-3974041 (directing readers to Ticketmaster for remaining Hollywood Bowl tickets) (last visited Oct. 23, 2026).

[2] *See* https://web.archive.org/web/20260909141602/https://www.mychemicalromance.com/; https://www.instagram.com/p/DPCgrnbkgDv/?xtok=bGkwanceweWZtaHp0gram (last visited Oct. 24, 2026).

[3] https://www.instagram.com/reel/DNEKl10yE6j/?psln=Z3BrcHkzazlzb21q (last visited Oct. 24, 2026).

15. Defendants' infringement also did not stay in Los Angeles. Every photograph and video of the counterfeit uniforms reproduces the DCC Uniform, and each one is a further infringing depiction that trades on Silver Star's goodwill and confuses those who see it. Those depictions have been published across TikTok, Instagram, X, and Reddit, where they are available to Texas residents and, on information and belief, have been viewed, shared, and commented on by Texas residents, including in Collin County. *See infra* ¶¶ 42 50.

16. That circulation was neither accidental nor unforeseeable. Defendants staged the counterfeits before an audience of thousands at a heavily covered, record-setting concert run, knowing that the performance would be filmed, photographed, and shared online. And Defendants aimed the counterfeits squarely at a Texas brand: as the counterfeit cheerleaders performed, MCR's frontman told the crowd, "Thank you, Dallas." *See infra* ¶ 39.

17. The depictions have reached exactly the audience where they do the most damage. One Instagram user tagged DCC's official account, @dccheerleaders, in a video of the performance, linking the counterfeit directly to DCC. *See infra* ¶ 46. Another post sparked a thread in an online forum devoted to DCC, where DCC's own fans debated whether the performers were DCC. *See infra* ¶ 49. Another post from a "Texan" referenced "watching the Dallas Cowboys Cheerleaders come out during Teenagers in MCR's LA set." *See infra* ¶ 48. Each such depiction viewed in Texas confuses Texas consumers about DCC's affiliation with Defendants and tarnishes, in Texas, the goodwill of a Texas-based brand. The brunt of that injury falls on Silver Star in Texas, where it is headquartered and where DCC performs.

***Venue***

18. Venue is proper in Dallas County under Texas Civil Practice and Remedies Code § 15.002(a)(1) because a substantial part of the events or omissions giving rise to the claims occurred in Collin County, including the dissemination of the infringing content to, and resulting

confusion and injury among, audiences in Collin County, and the infliction of reputational injury on Silver Star, which resides in Collin County, where it owns and operates the DCC brand. In the alternative, venue is proper in Collin County under § 15.002(a)(4), because Defendants are not natural persons residing in Texas and do not maintain a principal office in Texas, and Silver Star resided in Collin County when the causes of action accrued. Because venue is proper as to at least one Defendant, venue is proper as to all Defendants for claims arising out of the same transaction, occurrence, or series of transactions or occurrences. Tex. Civ. Prac. & Rem. Code § 15.005.

## FACTUAL BACKGROUND ALLEGATIONS

***For More Than 50 Years, The DCC Uniform Has Signaled One Thing: The Dallas Cowboys Cheerleaders***

19. Plaintiff Pro Silver Star, Ltd. owns the Dallas Cowboys Cheerleaders brand, including the DCC Uniform and the federally registered trademarks associated with the Dallas Cowboys Cheerleaders.

20. The Dallas Cowboys Cheerleaders are the cheerleading and dance squad of the Dallas Cowboys, and the DCC Uniform is their signature. In 1972, Cowboys president and general manager Tex Schramm and DCC director Dee Brock commissioned Dallas fashion designer Paula Van Wagoner to create a uniform with a western theme to match the Cowboys. Van Wagoner supplied that western identity through the bolero top and the stars.[4] DCC has worn Van Wagoner's design ever since.

21. The DCC Uniform is recognized as an emblem of American popular culture. Indeed, the performers that wear the DCC Uniform are known as "America's Sweethearts." In

---

[4] *See* Kristi Scales, *Making History: Paula Van Wagoner, the Creator the DCC Uniform Honored*, Dall. Cowboys (Mar. 13, 2018), https://www.dallascowboys.com/news/making-history-paula-van-wagoner-the-creator-the-dcc-uniform-honored-455266 (last visited Oct 23, 2026).

2018, DCC donated two DCC Uniforms and a copy of Van Wagoner's original sketch to the Smithsonian's National Museum of American History.[5] The Smithsonian's own catalog entry calls the uniform a "carefully guarded trademark."[6]

22. DCC has carried that uniform around the world on behalf of the country. Since 1979, DCC has performed on 87 USO tours, more international entertainment trips to U.S. military bases than any other professional performer or group.[7] DCC members have described DCC's initials as standing for "Dedication, Character and Community."[8] Every year, DCC performs in the Dallas Cowboys' nationally televised Thanksgiving halftime show, which launches The Salvation Army's Red Kettle Campaign.[9]

23. The Thanksgiving halftime show is one of the most-watched events on American television. The Cowboys' 2025 Thanksgiving Day game, during which Post Malone headlined the 29th annual Red Kettle Kickoff halftime show, averaged 57.23 million viewers on CBS and peaked at more than 61 million, making it the most-watched regular-season game in NFL history.[10]

---

[5] Scales, *supra* note 2.

[6] Smithsonian Inst., Nat'l Museum of Am. Hist., Object No. nmah_1848753, https://www.si.edu/object/nmah_1848753 (last visited Oct. 23, 2026).

[7] *DCC Community*, Dall. Cowboys, https://www.dallascowboys.com/community/dcc-community (last visited Oct. 23, 2026).

[8] *DCC Complete 81st USO Tour*, Dall. Cowboys, https://www.dallascowboys.com/news/dcc-complete-81st-uso-tour-421866 (last visited Oct. 23, 2026).

[9] *DCC Community*, *supra* note 5.

[10] *Cowboys vs. Chiefs on Thanksgiving on CBS Becomes Most-Watched NFL Regular-Season Game of All Time*, CBS Sports, https://www.cbssports.com/nfl/news/cowboys-chiefs-thanksgiving-cbs-most-watched-nfl-regular-season-game-all-time (last visited Oct. 23, 2026); *Post Malone to Headline Thanksgiving Halftime Show for Chiefs vs. Cowboys*, KCTV5 (Nov. 17, 2025), https://www.kctv5.com/2025/11/17/post-malone-headline-thanksgiving-halftime-show-chiefs-vs-cowboys/ (last visited Oct. 23, 2026); *Cowboys Announce Halftime Performer for 2025 Thanksgiving Game*, Sports Illustrated, https://www.si.com/nfl/cowboys-post-malone-halftime-performer-for-2025-thanksgiving-game (last visited Oct. 23, 2026).

Recent halftime headliners have also included Lainey Wilson and Jelly Roll, Dolly Parton, and the Jonas Brothers.

24. Silver Star has invested heavily in the DCC brand and the DCC Uniform for more than five decades, and that investment has paid off. As early as 1979, DCC licensed others to manufacture and distribute posters, calendars, T-shirts, and other products depicting the cheerleaders in the DCC Uniform. Those products enjoyed nationwide commercial success, and DCC had already spent large amounts of money introducing the public to its uniformed cheerleaders.

25. DCC's fame has only grown. In 2024, Netflix announced *America's Sweethearts: Dallas Cowboys Cheerleaders*, a docuseries following the squad from auditions through the NFL season. The series has since returned for additional seasons. Media articles have reported that the first season drew 2.3 million views in its first four days, reached Netflix's Top 10 in 27 countries, and stayed on Netflix's U.S. Top 10 list for five weeks.[11] The second season launched with 3.3 million views and reached the Top 10 in 20 countries, and a third season premiered in June 2026.[12] Before Netflix, DCC was the subject of *Dallas Cowboys Cheerleaders: Making the Team*, which aired on CMT for sixteen years until 2022.[13]

[11] Autumn Hawkins, *Dallas Cowboys Cheerleaders Season 3 Netflix Trailer Released*, ClutchPoints (June 2, 2026), https://clutchpoints.com/entertainment/dallas-cowboys-cheerleaders-season-3-netflix-trailer-released (last visited Oct. 23, 2026); Jacob Robinson, *Netflix Renews 'America's Sweethearts: Dallas Cowboys Cheerleaders' for Season 2*, What's on Netflix, https://whats-on-netflix.com/news/netflix-renews-americas-sweethearts-dallas-cowboys-cheerleaders-for-a-second-season (last visited Oct. 23, 2026).

[12] Hawkins, *supra* note 9.

[13] *Dallas Cowboys Cheerleaders Docuseries Renewed for a Second Season on Netflix*, CBS News Tex., https://www.cbsnews.com/texas/news/dallas-cowboys-cheerleaders-docuseries-renewed-netflix (last visited Oct. 23, 2026).

26. DCC is also a fixture of live music. DCC appears on stage with major recording artists. Its surprise appearances at concerts, including with Megan Moroney, Dua Lipa, Queen, and Kacey Musgraves, have become part of its brand. When cheerleaders in the DCC Uniform walk onto a concert stage, audiences have every reason to believe they are watching DCC.

27. DCC's audience has grown with it. DCC's verified Instagram account, which describes the squad as "Often imitated, never equaled," has more than 1.8 million followers.[14] That is roughly two and a half times the approximately 663,000 followers the account had before *America's Sweethearts: Dallas Cowboys Cheerleaders* premiered, already the most of any NFL cheerleading squad by a wide margin and even more than some NFL teams.[15] DCC also maintains 1.3 million followers on TikTok and 208,800 on X, and its content regularly reaches tens of millions of viewers.[16] Every one of those followers, and every viewer of the Netflix series, the Thanksgiving halftime show, and DCC's USO and concert appearances, has seen the DCC Uniform and learned to recognize it as DCC's.

28. DCC also declines public appearances when the venue, content, or theme of the appearance does not align with DCC's brand and image.

---

[14] Dallas Cowboys Cheerleaders (@dccheerleaders), Instagram, https://www.instagram.com/dccheerleaders/ (last visited Oct. 23, 2026).

[15] *What Is the Most Popular NFL Cheer Team? Miami Dolphins Rank in Top Three on This List*, AOL, https://aol.com/most-popular-nfl-cheer-team-100959371.html (last visited Oct. 23, 2026) (reporting Betway study listing DCC with 663,000 Instagram followers, the most of any NFL cheerleading squad).

[16] *See* Dallas Cowboys Cheerleaders (@dccheerleaders), TikTok, https://www.tiktok.com/@dccheerleaders (last visited Oct. 23, 2026); Dallas Cowboys Cheerleaders (@DCCheerleaders), X, https://x.com/DCCheerleaders (last visited Oct. 23, 2026).

***Silver Star's Valuable Rights in the DCC Uniform***

29. The DCC Uniform consists of a distinctive and arbitrary combination of elements: white boots, white shorts, a white belt decorated with blue stars, a blue bolero blouse, and a white vest decorated with blue stars on each side of the front and white fringe around the bottom. For the past several years, the belt has been finished with a custom silver, jewel-encrusted buckle. None of these choices is dictated by the demands of cheerleading. Together they evoke a western flavor that belongs to DCC alone.

30. The DCC Uniform (the "DCC Uniform Trade Dress") is registered on the Principal Register of the United States Patent and Trademark Office as U.S. Reg. No. 2,906,113, and that registration is incontestable under 15 U.S.C. § 1065, as the DCC Uniform has been in continuous use for over five consecutive years following its registration, is still in use in commerce, and has been maintained through the submission of all required declarations to the United States Patent and Trademark Office. Silver Star's incontestable registration provides conclusive evidence of: (a) Silver Star's exclusive rights in the DCC Uniform Trade Dress, including the exclusive right to use; (b) Silver Star's ownership of the DCC Uniform Trade Dress; and (c) that the DCC Uniform Trade Dress is valid, distinctive, and non-functional. A reproduction of the registered DCC Uniform Trade Dress is in **Table 1** below.

**Table 1**

| Registration No. | Mark |
|---|---|
| 2906113 (Nov. 30, 2004) |  |

31. In addition, Silver Star owns valid, protectable, and enforceable common-law rights in the DCC Uniform Trade Dress because it is inherently distinctive and has acquired distinctiveness through customers' longstanding recognition of these marks as the source of entertainment originating from the DCC.

32. DCC guards the uniform closely. Each uniform is tailored to the individual cheerleader who wears it, and for decades the signature blouse, vest, and shorts have been handmade by a single DCC seamstress.[17] DCC uniforms are returned by DCC members at the end of each year. As a result of these efforts, third parties have voluntarily ceased use of the DCC Uniform Trade Dress. Further, courts have recognized the uniform's distinctiveness for nearly

[17] Smithsonian Inst., *supra* note 4; *Hand-Stitching History: The Story of Lisa Dobson*, Dall. Cowboys, https://dallascowboys.com/news/hand-stitching-history-the-story-of-lisa-dobson (last visited Oct. 23, 2026).

half a century and forced infringers to cease use of the trade dress. In 1979, the Second Circuit affirmed an injunction barring a motion picture in which a performer wore a uniform "strikingly similar" to the DCC Uniform, holding that the uniform is an arbitrary design capable of trademark protection and that the film's use of it was likely to confuse the public as to sponsorship.[18] The same year, the Fifth Circuit affirmed an injunction against a poster in which former cheerleaders wore uniforms "nearly identical" to DCC's.[19]

***Defendants and their Performance of The Black Parade***

33. MCR is a rock band that, in the summer of 2025, began touring *The Black Parade*, a theatrical production that celebrates the twentieth anniversary of its 2006 album by the same name. The tour is a major commercial enterprise. Its 2025 predecessor sold more than 450,000 tickets in just ten North American markets and included a performance at Globe Life Field in Arlington.[20] MCR played the Alamodome in San Antonio on September 12, 2026.[21]

34. The U.S. portion of the tour concludes with a five-night run at the Hollywood Bowl on October 21, 23, 24, 30, and 31, 2026, the first time any band has played five shows there in a single run. The run is part of and timed to a much broader, nationwide retail campaign: an expanded anniversary reissue of the album released through Reprise Records on October 23, 2026,

---

[18] *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 203 05, 206 07 (2d Cir. 1979).

[19] *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1186, 1188–89 (5th Cir. 1979).

[20] https://www.instagram.com/reel/DNEKl10yE6j/?psln=Z3BrcHkzazlzb21q (last visited Oct. 24, 2026).

[21] https://www.facebook.com/MySA/videos/nearly-50000-people-packed-the-alamodome-in-san-antonio-for-the-long-live-the-bl/1059524346971200/ (last visited Oct. 24, 2026); Jason Price, *MY CHEMICAL ROMANCE Announce Dates for 'The Black Parade 2026' Tour*, Icon Vs. Icon (Sept. 22, 2025), https://www.iconvsicon.com/2025/09/22/my-chemical-romance-the-black-parade-2026-tour-dates/ (last visited Oct. 23, 2026).

and a Hot Topic promotion featuring expanded merchandise and in-store listening parties built around the tour's staging.[22]

35. On information and belief, MCR promotes, markets, and sells tickets to performances of *The Black Parade* through Live Nation.

***<u>Defendants' Unauthorized Use of the DCC Uniform</u>***

36. On October 21, 2026, MCR opened its Hollywood Bowl run. The production is set in a fictional dystopian nation called Draag, ruled by a "Grand Immortal Dictator" whose regime the masses try to overthrow.[23]

37. During MCR's performance of "Teenagers," a line of female performers took the stage dressed as the Dallas Cowboys Cheerleaders and performed cheerleading choreography. Their counterfeit uniforms copied the DCC Uniform's signature elements: white boots, white shorts, a blue blouse tied above the midriff, and a white vest adorned with blue stars.[24]

38. The counterfeits are confusingly similar to the DCC Uniform. They reproduce the very combination of colors and elements that has identified DCC since 1972: white boots, white shorts, a blue top cropped above the midriff, and a white vest adorned with blue stars. That is the same "particular combination of colors and collocation of decorations" that distinguishes the DCC

---

[22] *MY CHEMICAL ROMANCE Reunites with HOT TOPIC to Celebrate Release of 'The Black Parade (20th Anniversary)'*, Blabbermouth.net (Oct. 2, 2026), https://blabbermouth.net/news/my-chemical-romance-reunites-with-hot-topic-to-celebrate-release-of-the-black-parade-20th-anniversary (last visited Oct. 23, 2026).

[23] *My Chemical Romance Begins Historic Hollywood Bowl Run, Lead Singer's Dad Hints at New Music*, KTLA (syndicated by Yahoo Ent.), https://www.yahoo.com/entertainment/music/articles/chemical-romance-begins-historic-hollywood-194729819.html (last visited Oct. 23, 2026).

[24] Eddie Fu, *My Chemical Romance Bring Out "Dallas Cowboys Cheerleaders" at Hollywood Bowl: Watch*, Consequence (Oct. 22, 2026), https://consequence.net/2026/10/my-chemical-romance-dallas-cowboys-cheerleaders-hollywood-bowl/ (last visited Oct. 23, 2026); Dunworth, *supra* note 1.

Uniform and that courts previously have found to be DCC's protectable trade dress. A side-by-side comparison of the DCC Uniform and Defendants' counterfeit is included as **Table 2** below.

| **Table 2** | |
|---|---|
| **DCC Uniform.** | **Counterfeit Uniform** |
|  |  |

39. Defendants left no doubt about who the performers were meant to be. As the costumed performers cheered across the stage, MCR frontman Gerard Way told the crowd, "Thank you, Dallas."[25]

40. Then Defendants handed the performers rifles. The costumed performers armed themselves with semi-automatic rifles and joined a staged firefight, and were then depicted being shot and crawling off the stage. *Rolling Stone* summed up the result as "gunslinging, Dallas Cowboys-esque cheerleaders."[26]

---

[25] *My Chemical Romance Begins Historic Hollywood Bowl Run*, *supra* note 20.

[26] Fu, *supra* note 21; *My Chemical Romance Mark Grand Immortal Dictator's Birthday with a Bang at Hollywood Bowl*, Rolling Stone, https://www.rollingstone.com/music/music-live-reviews/my-chemical-romance-black-parade-hollywood-bowl-setlist-1235645418/ (last visited Oct. 23, 2026).



41. The brand DCC built on dedication, character, and community, and on decades of entertaining American troops, was thus put on a stage in a gunfight, its uniform worn by performers shown shooting and being shot.

***<u>The Public Believed It Was Watching the Real DCC</u>***

42. The confusion was immediate. Audience members posted videos identifying the performers as the Dallas Cowboys Cheerleaders, and those posts spread across social media, including throughout this State, within hours.

43. A TikTok video posted from the Hollywood Bowl bears the caption "The chances of the Dallas Cowboys cheerleaders on stage with My Chemical Romance are low but never zero." It drew 21,600 likes and 1,863 shares.[27]

[27] @lolo.m711, TikTok, https://www.tiktok.com/@lolo.m711/video/7699514004506512671 (last visited Oct. 23, 2026).




44. Another TikTok video from the Hollywood Bowl bears the caption "When your favorite team's cheerleaders collab with your favorite band," and is described as "MCR 🤍 DCC." It drew 24,100 likes and 3,474 shares.[28]

[28] @mylifeinconcerts_, TikTok, https://www.tiktok.com/@mylifeinconcerts_/video/7699377777392225550 (last visited Oct. 23, 2026).




45. Another post celebrated "when the DCC cheerleaders make a surprise appearance at the MCR Hollywood Bowl show."[29]




[29] https://www.tiktok.com/@notoriousahb/video/7699397128891682061 (last visited Oct. 23, 2026).

46. Another user posted an Instagram Reel that went as far as to tag the DCC in a video of the performance, saying "Forever loving that the @dccheerleaders are now canon in the lore for Draag. Thank you @mychemicalromance for an epic show…"[30]




47. A user on X wrote that "[t]he Dallas cowboy cheerleaders defending my chemical romance in a shootout" was the very last thing the user expected.[31]

48. Another post on Instagram said, "Me, a Texan, watching the Dallas Cowboys Cheerleaders come out during Teenagers in MCR's LA set."[32]

---

[30] Instagram, https://www.instagram.com/reels/Dey3qDBvk_1/ (last visited Oct. 23, 2026).

[31] @strawberrichim, X (Oct. 22, 2026, 5:02 AM), https://x.com/strawberrichim/status/2113133794949841210 (last visited Oct. 23, 2026).

[32] https://www.instagram.com/reel/DezEjLsxmtO/?rpxt=ZGFqNXgzNjBza21n (last visited Oct. 24, 2026).




49. DCC's own fans were fooled too. In a Reddit forum devoted to DCC and its television programming, a user started a thread titled "DCC at My Chemical Romance?"[33] One commenter wrote, "I hope this is featured on the DCC Netflix show I love them both!"[34] Another, pointing to how tightly DCC controls its uniform, concluded that the performers "ha[d] to be" DCC.[35] Another asked whether the performers were the real DCC and said the user was leaning toward yes.




[33] u/Necia_210, *DCC at My Chemical Romance?*, Reddit: r/DCCMakingtheTeam, https://www.reddit.com/r/DCCMakingtheTeam/comments/1xcommd/dcc_at_my_chemical_romance/ (last visited Oct. 23, 2026).

[34] *Id.*

[35] *Id.*

**snflwrsprkl**

to someone who knows more about football or cheerleaders than me — do you think those were the actual dallas cowboys cheerleaders or actresses dressed up as them? I'm leaning towards the former because otherwise they could have gone the generic cheerleader route, but I would love to hear from someone who might know more about the rights to using their outfits or recognize any of the women.

**trailofcheese**

Having watched the Netflix show it has to be them. They are really controlling over their looks I think it may even be trademarked in. And they can't even wear their uniforms outside of events and hand them back at the end of the season. If they weren't real Dallas cowboys cheerleaders the outfits would be different.

**Moist-Cloud2412**

They weren't DCC

**ChanceSuspect19**

I think more likely they're taking a risk with the copyright issues

**whateverisclever09**

I was going to say the same. However I'm a huge dcc fan and didn't recognize one of them. Those pom poms were also questionable but I think you're correct.

50. The press saw the same thing. *Consequence* reported that MCR both confused and delighted fans with the stunt.[36] A reviewer on the Los Angeles commercial television station, KTLA, openly asked whether the performers were the real Dallas Cowboys Cheerleaders.[37] That confusion was predictable: as the music and entertainment magazine *New Musical Express* reported, the real DCC does make surprise appearances at concerts.[38]

---

[36] Fu, *supra* note 21.

[37] *My Chemical Romance Begins Historic Hollywood Bowl Run*, *supra* note 20.

[38] Dunworth, *supra* note 1.

51. Every view, share, and repost carries the false association further, to audiences who never set foot in the Hollywood Bowl. A single Instagram video of the performance has drawn more than 65,000 likes as of October 23, 2026.[39]

***The Harm Is Ongoing and Defendants Plan To Do It Again***

52. On October 22, 2026, Silver Star wrote to MCR's representatives and Live Nation, among others. Silver Star asked for one narrow thing: that the performers stop wearing the DCC Uniform. On October 23, 2026, Silver Star again wrote to MCR's representatives and Live Nation, presenting them with a copy of a Petition and Application for a Temporary Restraining Order and Temporary Injunction. MCR's performers nevertheless again wore the DCC Uniform during the October 23, 2026 concert.[40]

53. MCR is scheduled to perform at the Hollywood Bowl again on October 30 and 31, 2026.[41] Absent relief from this Court, Defendants will put the DCC Uniform back on stage, back in a firefight, and back across social media.

## TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

54. Silver Star seeks narrow relief. It does not ask the Court to stop Defendants' concerts or to alter MCR's music, narrative, staging, politics, or choreography. It asks only that Defendants stop dressing performers in the DCC Uniform, or in costumes confusingly similar to it, and stop using images of those costumes to promote their shows.

55. That relief cannot wait. At a minimum, Defendants are scheduled to put the counterfeits back on stage at the Hollywood Bowl on October 30 and 31, 2026. *See supra* ¶¶ 34,

---

[39] @vampirelauren666, Instagram, https://www.instagram.com/reels/DeyiHEHMVY0/ (last visited Oct. 23, 2026).

[40] https://x.com/Mockingjay_us/status/2114076109641777550?s=46 (last visited Oct. 24, 2026).

[41] https://www.mychemicalromance.com/ (last visited Oct. 24, 2026).

52-53. Silver Star therefore seeks a temporary restraining order to preserve the status quo until the Court can hear its application for a temporary injunction, and a temporary injunction to preserve the status quo until trial.

***Temporary Injunction***

56. To obtain a temporary injunction, "an applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (defining "an injury [as] irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard"). Silver Star satisfies each.

***A. Silver Star Has Valid Causes of Action***

57. Silver Star asserts claims for false designation of origin, false association, false endorsement, and trade dress infringement, 15 U.S.C. § 1125(a); dilution by tarnishment, 15 U.S.C. § 1125(c); common-law trade dress infringement and unfair competition; Texas dilution; and contributory and vicarious liability. *See infra* Counts 1 5.

***B. Silver Star Has a Probable Right to Relief***

58. ***First***, Silver Star is likely to succeed on its Lanham Act infringement claim. The DCC Uniform is federally registered, and the registration is incontestable. *See supra* ¶ 30. The Second Circuit held decades ago that "the combination of the white boots, white shorts, blue blouse, and white star-studded vest and belt is an arbitrary design which makes the otherwise functional uniform trademarkable." *Pussycat Cinema*, 604 F.2d at 204 (affirming preliminary injunction against film that costumed a performer in a uniform "strikingly similar" to the DCC Uniform).

59. Defendants' use is likely to cause confusion, and indeed has caused actual confusion in Texas and elsewhere. "The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Id.* at 205. Defendants copied the uniform's overall look, which is all an audience of thousands can see. They did so in the very setting, a surprise concert appearance, in which the real DCC regularly performs. MCR's frontman thanked "Dallas" as the counterfeits cheered. And the public, DCC's own fans, and the press mistakenly identified the performers as DCC or asked whether they were. *See supra* ¶¶ 42 50.

60. ***Second***, Silver Star is likely to succeed on its dilution claim. Dilution by tarnishment is an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). The DCC Uniform is famous by any measure. *See supra* ¶¶ 20 28. Defendants took a wholesome, family brand built on decades of entertaining American troops and community work and put it in a staged firefight, worn by performers shown shooting and being shot. The public has already drawn the connection. *See supra* ¶¶ 42 51. And Defendants' use is commercial: the counterfeits appear in a ticketed, five-night run timed to a nationwide album reissue and merchandise campaign. *See supra* ¶¶ 33 36.

61. ***Finally***, the First Amendment is no defense here. When a film used the DCC Uniform, the Second Circuit held that the use "hardly qualifies as parody or any other form of fair use," and that because there were "numerous ways" to make the film's point "without infringing plaintiff's trademark," the injunction did not "encroach upon" the defendants' First Amendment rights. *Pussycat Cinema*, 604 F.2d at 206 (affirming preliminary injunction). So too here. If Defendants want cheerleaders to evoke Americana, cheerleading is itself a distinctly American

tradition, and any cheerleading costume would serve. Indeed, MCR's music video for "Teenagers" uses cheerleaders in generic cheerleading costumes.[42] What Defendants may not do is borrow DCC's uniform, and DCC's goodwill, to do it.

### C. *Silver Star Faces Probable, Imminent, and Irreparable Injury*

62. The injury is imminent: Defendants will perform two more times beginning October 30, 2026. *See supra* ¶ 53. It is also irreparable, as the Lanham Act presumes. A plaintiff seeking a temporary restraining order or temporary injunction "shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection." 15 U.S.C. § 1116(a).

63. Indeed, the presumption is superfluous under the circumstances here, which unmistakably show actual confusion over the dancers who performed in the DCC counterfeit uniforms and the DCC itself. The trademark laws protect "the synonymous right of a trademark owner to control his product's reputation," and confusing use of the DCC Uniform "would result in irreparable harm to plaintiff were defendants not enjoined." *Pussycat Cinema*, 604 F.2d at 205, 207 (citation omitted). Each night the counterfeits appear, tens of thousands more people see DCC's uniform in a gunfight, and each video and repost carries that image further. Those impressions cannot be recalled, and the damage to DCC's goodwill cannot be measured by any certain pecuniary standard. Defendants, by contrast, lose nothing: a costume can be changed before the next show, and Defendants previously featured cheerleaders in generic costumes. *See supra* ¶ 61.

---

[42] https://www.youtube.com/watch?v=k6EQAOmJrbw (last viewed Oct. 24, 2026).

***Temporary Restraining Order***

64. A court granting a temporary restraining order must "(1) state why the order was granted without notice if it is granted *ex parte*; (2) state the reasons for the issuance of the order by defining the injury and describing why it is irreparable; (3) state the date the order expires and set a hearing on a temporary injunction; and (4) set a bond." *In re Office of Attorney Gen.*, 257 S.W.3d 695, 697 (Tex. 2008) (citing Tex. R. Civ. P. 680, 684).

65. Silver Star seeks a temporary restraining order for the reasons set forth above, *supra* ¶¶ 52 63. The injury is the loss of control over the reputation and goodwill of the DCC Uniform, public confusion as to DCC's sponsorship of or affiliation with Defendants' production, and tarnishment of the DCC Uniform through its association with simulated gun violence. That injury is irreparable because it cannot be measured by any certain pecuniary standard and, once disseminated, cannot be undone.

66. Silver Star requests that the Court restrain Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, from: (a) costuming any performer in the DCC Uniform, or in any costume confusingly similar to it, at any performance, including the performances scheduled at the Hollywood Bowl on October 30 and 31, 2026; and (b) using photographs, video, or other depictions of performers in such costumes in any advertising, promotion, merchandise, or official social-media or press materials.

67. Silver Star requests that the Court set a hearing on its application for a temporary injunction within fourteen days and set a nominal bond. Texas Rules of Civil Procedure §§ 680, 684.

## CAUSES OF ACTION

### Count 1: False Designation of Origin, False Association, False Endorsement, and Trade Dress Infringement (15 U.S.C. § 1125(a))

68. Silver Star repeats and realleges each allegation in the preceding paragraphs as if fully set forth herein.

69. Silver Star owns the DCC Uniform Trade Dress, which is registered on the Principal Register as U.S. Reg. No. 2,906,113. That registration is incontestable and is conclusive evidence of the validity of the DCC Uniform Trade Dress, of Silver Star's ownership of it, and of Silver Star's exclusive right to use it. Silver Star also owns common-law rights in the DCC Uniform Trade Dress. *See supra* ¶ 31.

70. The DCC Uniform Trade Dress is distinctive, non-functional, and famous. The public recognizes it as identifying DCC and entertainment services originating with, sponsored by, or approved by Silver Star.

71. Without Silver Star's consent, Defendants have used in commerce, in connection with the advertising, sale, and performance of ticketed live entertainment services, counterfeit uniforms that copy and are confusingly similar to the DCC Uniform Trade Dress.

72. Defendants' use is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Silver Star and DCC, and as to the origin, sponsorship, or approval of Defendants' performances by Silver Star and DCC, in violation of 15 U.S.C. § 1125(a)(1)(A). Defendants' use has already caused actual confusion. *See supra* ¶¶ 42–51.

73. Defendants' conduct is willful. Defendants deliberately costumed performers to evoke DCC, MCR's frontman expressly invoked "Dallas" as they performed, and Defendants have continued their conduct after receiving Silver Star's October 22, 2026 letter and a copy of Silver

Star's Petition and Application for a Temporary Restraining Order and Temporary Injunction. *See supra* ¶¶ 37–39, 51–53.

74. Defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Silver Star's goodwill and reputation, for which Silver Star has no adequate remedy at law. Silver Star is entitled to injunctive relief under 15 U.S.C. § 1116 and, upon final judgment, to Defendants' profits, Silver Star's damages, and the costs of the action under 15 U.S.C. § 1117(a).

**Count 2: Federal Trademark Dilution by Tarnishment (15 U.S.C. § 1125(c))**

75. Silver Star repeats and realleges each allegation in the preceding paragraphs as if fully set forth herein.

76. The DCC Uniform Trade Dress is famous within the meaning of 15 U.S.C. § 1125(c)(2)(A). It is widely recognized by the general consuming public of the United States as a designation of the source of Silver Star's entertainment services, as shown by, among other things, more than fifty years of continuous use; national television exposure, including during the most-watched regular-season game in NFL history; a multi-season Netflix docuseries and a sixteen-year CMT series; DCC's social media following of millions; and federal registration on the Principal Register. *See supra* ¶¶ 28–31.

77. The DCC Uniform Trade Dress became famous decades before Defendants began using their counterfeits on October 21, 2026.

78. Defendants' commercial use in commerce of counterfeits of the DCC Uniform Trade Dress is likely to cause dilution by tarnishment. It creates an association between the DCC Uniform Trade Dress and, among other things, simulated gun violence that harms the reputation of the DCC Uniform Trade Dress. 15 U.S.C. § 1125(c)(2)(C); *see supra* ¶¶ 40–41.

79. Defendants' use is not excluded under 15 U.S.C. § 1125(c)(3). It is commercial, and Defendants used the counterfeits to identify their performers as DCC, not to comment on, criticize, or parody DCC.

80. On information and belief, Defendants willfully intended to trade on the recognition of the DCC Uniform Trade Dress and to harm its reputation, including by continuing their conduct after Defendants and their representatives were provided with Silver Star's October 22, 2026 letter and a copy of Silver Star's Petition and Application for a Temporary Restraining Order and Temporary Injunction on October 23, 2026. Silver Star is entitled to nation-wide injunctive relief under 15 U.S.C. §§ 1116 and 1125(c)(1) and, because Defendants acted willfully, to the remedies provided in 15 U.S.C. § 1117(a).

**Count 3: Common Law Trade Dress Infringement and Unfair Competition**

81. Silver Star repeats and realleges each allegation in the preceding paragraphs as if fully set forth herein.

82. Silver Star owns valid and enforceable common-law rights in the DCC Uniform Trade Dress. *See supra* ¶ 31.

83. Defendants' unauthorized use of counterfeits of the DCC Uniform Trade Dress is likely to cause confusion as to the source, sponsorship, affiliation, or approval of Defendants' performances, and passes off Defendants' performers as DCC. Defendants' conduct constitutes trade dress infringement and unfair competition under Texas common law.

84. Defendants' conduct was willful and has caused, and unless enjoined will continue to cause, irreparable injury to Silver Star. Silver Star is entitled to injunctive relief and to recover its damages.

**Count 4: Texas State Law Dilution**

85. Silver Star repeats and realleges each allegation in the preceding paragraphs as if fully set forth herein.

86. The DCC Uniform Trade Dress is famous and distinctive in Texas. It is widely recognized by the public throughout Texas as a designation of the source of Silver Star's entertainment services. DCC is based in Texas, performs in Texas, and has been a fixture of Texas culture for more than fifty years. *See supra* ¶¶ 20 28; Tex. Bus. & Com. Code § 16.103(a) (b).

87. Defendants began their commercial use of counterfeits of the DCC Uniform Trade Dress after the DCC Uniform Trade Dress became famous in Texas. Defendants' use, including the dissemination of depictions of the counterfeits to audiences in Texas, is likely to cause dilution by tarnishment of the DCC Uniform Trade Dress. Tex. Bus. & Com. Code §§ 16.001, 16.103(a).

88. Silver Star is entitled to injunctive relief throughout Texas. Tex. Bus. & Com. Code § 16.103(c). Because Defendants willfully intended to cause dilution, Silver Star is also entitled to the remedies provided under Chapter 16 of the Texas Business and Commerce Code. *Id.*

**Count 5: Contributory and Vicarious Infringement and Unfair Competition (Against Defendant Live Nation)**

89. Silver Star repeats and realleges each allegation in the preceding paragraphs as if fully set forth herein.

90. MCR has directly infringed the DCC Uniform Trade Dress and engaged in unfair competition. *See supra* Counts 1 and 3.

91. On information and belief, Live Nation promotes, markets, and sells tickets to the performances at which MCR uses the counterfeits, including through its Ticketmaster subsidiary. *See supra* ¶¶ 9, 13, 35.

92. Live Nation has known of MCR's infringement since at least October 22, 2026, when Silver Star notified it in writing. *See supra* ¶ 52. Live Nation has nonetheless continued to promote, market, and sell tickets to those performances, and is therefore contributorily liable for MCR's infringement and unfair competition.

93. On information and belief, Live Nation and MCR also act as partners or joint venturers in producing and presenting the Black Parade tour, and Live Nation exercises joint control over the performances at which the counterfeits appear. Live Nation is therefore vicariously liable for MCR's infringement and unfair competition.

94. Under 15 U.S.C. § 1116(a), Silver Star is entitled to nation-wide injunctive relief against Live Nation. Silver Star is also entitled to recover its damages.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Silver Star respectfully requests that the Court enter judgment in favor of Silver Star and against Defendants as follows:

A. Issuing a temporary restraining order and, after hearing, a temporary injunction restraining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, from (i) costuming any performer in the DCC Uniform, or in any costume confusingly similar to it, at any performance, including without limitation the performances scheduled at the Hollywood Bowl on October 30 and 31, 2026; and (ii) using photographs, video, or other depictions of performers in such costumes in any advertising, promotion, merchandise, or official social-media or press materials;

B. Upon final trial, permanently enjoining Defendants from the conduct described in paragraph A;

C. Awarding Silver Star Defendants' profits, Silver Star's actual damages, and the costs of this action under 15 U.S.C. § 1117(a), and all remedies available under Chapter 16 of the Texas Business and Commerce Code.

D. Awarding Silver Star its reasonable attorneys' fees to the extent permitted by law;

E. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by law; and

F. Awarding such other and further relief, at law or in equity, to which Silver Star may be justly entitled.

Respectfully submitted,

**JACKSON WALKER**

Edwin Buffmire
ebuffmire@jw.com
Texas State Bar No. 24078283
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Tel.: 214-953-5939

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Alex Spiro*
alexspiro@quinnemanuel.com
295 Fifth Avenue, 9th Floor
New York, NY 10016
Tel.: 212-849-7100

Jimmy Bieber
jimmybieber@quinnemanuel.com
Texas State Bar No. 24130002 3100
McKinnon St, Suite 1125 Dallas,
TX 75201
Tel.: 213-443-3817

**ATTORNEYS FOR PLAINTIFF**

**pro hac vice forthcoming*

## UNSWORN DECLARATION

1. My name is Meredith Counce. I am the Senior Vice President of Brand and Marketing for the Plaintiff Pro Silver Star, Ltd. ("Silver Star"), and I am authorized to make this declaration on Silver Star's behalf.

2. I have read Plaintiff's Original Verified Petition and Application for a Temporary Restraining Order and a Temporary Injunction (the "Petition"). The factual statements contained in paragraphs 1, 7, 17 through 32, and 37 through 51 of the Petition are within my personal knowledge or are based on my review of Silver Star's business records and the publicly available materials cited in the Petition, and they are true and correct.

My name is Meredith Chambers Counce, my date of birth is January 22, 1988, and my address is 1 Cowboys Way, Frisco, Texas, 75034, United States. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Collin County, State of Texas, on the 25th day of October, 2026

[signature]

Declarant

**EXHIBIT 2**

CAUSE NO. ____________

| | | |
|---|---|---|
| **PRO SILVER STAR, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **COLLIN COUNTY, TEXAS** |
| | § | |
| **MY CHEMICAL ROMANCE; and LIVE NATION ENTERTAINMENT, INC.,** | § | |
| | § | |
| | § | |
| | § | **____ JUDICIAL DISTRICT** |
| **Defendants.** | § | |
| | § | |
| | § | |

**CERTIFICATE UNDER COLLIN COUNTY LOCAL RULE 3.4 IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND A TEMPORARY INJUNCTION**

I, James Bieber, certify the following in connection with Plaintiff's Original Verified Petition and Application for a Temporary Restraining Order and a Temporary Injunction (the "Petition"). I have personal knowledge of the facts stated herein.

1. I am counsel of record for Plaintiff in this action. I make this certificate on personal knowledge relating to the matters stated below.

2. On October 23, 2026, at 5:39 pm, I emailed a copy of the Petition and the proposed order to the following persons using the following methods:

a. Matt Galle, Creative Arts Agency, representative for MCR, by email.

b. Bobbie Gale, 2b Entertainment, representative for MCR, by email.

c. Laura Swanson, Executive Vice President at Warner Records, representative for MCR, by email.

d. Michael G. Rowles, General Counsel for Live Nation, by email.

e. Mona Patel, General Counsel for Hollywood Bowl, by email.

3. On October 25, 2026, at 9:09 am Central Time, two hours before the Petition was filed, I emailed an updated copy of the Petition and the proposed order to the following persons using the following methods:

a. Matt Galle, Creative Arts Agency, representative for MCR, by email.

b. Bobbie Gale, 2b Entertainment, representative for MCR, by email.

c. Laura Swanson, Executive Vice President at Warner Records, representative for MCR, by email.

d. Michael G. Rowles, General Counsel for Live Nation, by email.

e. Mona Patel, General Counsel for Hollywood Bowl, by email.

4. As of the signing of this Certificate, no response to my communications has been received.

5. To the best of my knowledge, no other litigation is pending relating to the parties or the subject matter.

Dated: October 25, 2026

Respectfully submitted,

/s/ Jimmy Bieber
Jimmy Bieber
jimmybieber@quinnemanuel.com
Texas State Bar No. 24130002
3100 McKinnon St, Suite 1125
Dallas, TX 75201
Tel.: 213-443-3817

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pam Collins on behalf of Edwin Buffmire
Bar No. 24078283
pcollins@jw.com
Envelope ID: 121625118
Filing Code Description: Plaintiff's Original Petition (OCA)
Filing Description: Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction
Status as of 10/26/2026 8:53 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Edwin Buffmire | 24078283 | ebuffmire@jw.com | 10/26/2026 8:19:36 AM | SENT |
| Pam Collins | | pcollins@jw.com | 10/26/2026 8:19:36 AM | SENT |
| Cheryl Leger | | cleger@jw.com | 10/26/2026 8:19:36 AM | SENT |
| James Bieber | 24130002 | jimmybieber@quinnemanuel.com | 10/26/2026 8:19:36 AM | SENT |

# EXHIBIT 3

**CAUSE NO. 493-08658-2026**

| | | |
|---|---|---|
| **PRO SILVER STAR, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | § | |
| **v.** | § | **COLLIN COUNTY, TEXAS** |
| **MY CHEMICAL ROMANCE; and LIVE NATION ENTERTAINMENT, INC.,** | § | |
| **Defendants.** | § | **493rd JUDICIAL DISTRICT** |

## [PROPOSED] ORDER GRANTING PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND INJUNCTION

The Court has considered the Verified Application for a Temporary Restraining Order and Injunction filed by Plaintiff Pro Silver Star, Ltd. ("Plaintiff") against Defendants My Chemical Romance and Live Nation Entertainment, Inc. ("Defendants") as set forth below.

1. Plaintiff's Application for a Temporary Restraining Order meets all the requirements of Tex. R. Civ. P. 680. Plaintiff has established (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.

2. Plaintiff has asserted that Defendants infringed the DCC Uniform Trade Dress, which is registered on the Principal Register as U.S. Reg. No. 2,906,11. Plaintiff pleads causes of action for False Designation of Origin, False Association, False Endorsement, and Trade Dress Infringement (15 U.S.C. § 1125(a)), Federal Trademark Dilution by Tarnishment (15 U.S.C. § 1125(c)), Common Law Trade Dress Infringement and Unfair Competition, and Texas State Law Dilution.

3. Irreparable harm is presumed under the Lanham Act.

4. Even were Plaintiff required to prove irreparable harm, it has done so. The trademark laws protect the right of a trademark owner to control the product's reputation, and confusing use of the DCC Uniform would result in irreparable harm. Each night the counterfeits appear, tens of thousands more people see DCC's uniform in a gunfight, and each video and repost carries that image further. Those impressions cannot be recalled, and the damage to DCC's goodwill cannot be measured by any certain pecuniary standard.

5. The evidence shows that immediate and irreparable injury will result to Plaintiff before notice can be served and a hearing had on an application for injunctive relief. Tex. R. Civ. P. 680. Under 15 U.S.C. § 1116(a), the Court has the authority to enjoin infringing activity across state lines.

6. **IT IS THEREFORE ORDERED** that Defendants and their agents, employees, and those persons or entities in active concert or participation with them who receive actual notice of this order by personal service or otherwise, SHALL REFRAIN FROM:

a. costuming any performer in the DCC Uniform, or in any costume confusingly similar to it, at any performance, including the performances scheduled at the Hollywood Bowl on October 30 and 31, 2026; and

b. using photographs, video, or other depictions of performers in such costumes in any advertising, promotion, merchandise, or official social-media or press materials.

7. This Order shall expire fourteen days from the date and time of its issuance, unless before the expiration of that time, this order is extended for good cause shown for an additional fourteen days or terminated by judicial action prior to that time.

8. The Application for Temporary Injunction is set for a hearing on ____________________, 2026, at _____ o'clock ___.m. in ____________________________, physically located at ________________________________. Plaintiff shall appear at the hearing and show cause why a Temporary Injunction should not issue.

9. Plaintiff is not required to post bond for this Order to be effective, or the Court sets bond (or cash in lieu thereof) at $ _________.

10. The Clerk of the above-entitled Court shall issue a Temporary Restraining Order in conformity with the law and terms of this Order.

Signed and issued this __day of October, 2026, at __o'clock _.m.

_____________________________________
PRESIDING JUDGE

OCT 2 7 2026

**EXHIBIT 4**

**CAUSE NO. 493-08658-2026**

| | | |
|---|---|---|
| **PRO SILVER STAR, LTD.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MY CHEMICAL ROMANCE; and LIVE NATION ENTERTAINMENT, INC.,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **IN THE DISTRICT COURT OF**<br><br><br><br>**COLLIN COUNTY, TEXAS**<br><br><br><br>**493rd JUDICIAL DISTRICT**<br><br><br>**HON. CHRISTINE A. NOWAK** |

**NOTICE OF HEARING**

PLEASE TAKE NOTICE THAT a hearing on Plaintiff Pro Silver Star, Ltd.'s Application for a Temporary Restraining Order has been set on Wednesday, October 28, 2026 at 9:00 a.m., in person, in the District Court of Collin County, Texas, 493rd Judicial District Court, located at 2100 Bloomdale Rd., McKinney, Texas, 75071.

Respectfully submitted,

**JACKSON WALKER**

/s/ *Edwin Buffmire*
Edwin Buffmire
ebuffmire@jw.com
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Tel.: 214-953-5939

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Alex Spiro*

alexspiro@quinnemanuel.com
295 Fifth Avenue, 9th Floor
New York, NY 10016
Tel.: 212-849-7100

James Bieber
jimmybieber@quinnemanuel.com
Texas State Bar No. 24130002
3100 McKinnon St, Suite 1125
Dallas, Texas 90017
Tel.: 469-902-3600
**ATTORNEYS FOR PLAINTIFFS**

**pro hac vice forthcoming*

# EXHIBIT 5

Skip to Main Content Logout My Account Search Menu New Civil & Family Search Refine Search Back Location : All Civil & Family Courts Help

# Register of Actions

## Case No. 493-08658-2026

| | | |
|---|---|---|
| **Pro Silver Star, Ltd. vs. My Chemical Romance; and Live Nation Entertainment, Inc.** | § § § § § | Case Type: **All Other Civil Cases**<br>Date Filed: **10/26/2026**<br>Location: **493rd District Court** |

### Party Information

| | | Lead Attorneys |
|---|---|---|
| **Defendant** | **Live Nation Entertainment, Inc.** | **Pro Se** |
| **Defendant** | **My Chemical Romance** | **Pro Se** |
| **Plaintiff** | **Pro Silver Star, Ltd.** | **Edwin Buffmire**<br>*Retained*<br>214-953-5939(W) |

### Events & Orders of the Court

| | |
|---|---|
| | **OTHER EVENTS AND HEARINGS** |
| 10/26/2026 | **Plaintiff's Original Petition (OCA) $350.00**<br>*Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction* |
| 10/26/2026 | **Application for TRO (In Existing Case) $80.00**<br>*Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction* |
| 10/26/2026 | **Letter**<br>*Request for Citation* |
| 10/26/2026 | **Request for Citation $8.00** |
| 10/26/2026 | **Request for Citation to Secretary Of State $16.00** |
| 10/26/2026 | **Citation**<br>*Plaintiff's Original Verified Petition and Application for a Temporary Restraining Order and A Temporary Injunction*<br>Live Nation Entertainment, Inc. Unserved |
| 10/26/2026 | **Citation**<br>*Plaintiff's Original Verified Petition and Application for a Temporary Restraining Order and A Temporary Injunction*<br>My Chemical Romance Unserved |
| 10/26/2026 | **Statement**<br>*Unsworn Declaration* |
| 10/28/2026 | *CANCELED* **Temporary Restraining Order Hearing** (9:00 AM) (Judicial Officer Nowak, Christine)<br>*Agreement Reached* |
| 10/28/2026 | **Temporary Restraining Order Hearing** (9:00 AM) (Judicial Officer Nowak, Christine) |
| 11/09/2026 | **Temporary Injunction** (3:00 PM) (Judicial Officer Nowak, Christine) |

### Financial Information

| | | | | |
|---|---|---|---|---|
| | **Plaintiff** Pro Silver Star, Ltd. | | | |
| | Total Financial Assessment | | | 454.00 |
| | Total Payments and Credits | | | 454.00 |
| | **Balance Due as of 10/27/2026** | | | **0.00** |
| 10/26/2026 | Transaction Assessment | | | 454.00 |
| 10/26/2026 | Payment | Receipt # DC-44938-2026 | Pro Silver Star, Ltd. | (272.00) |
| 10/26/2026 | State Credit | | | (182.00) |