**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **PRO SILVER STAR, LTD.,**<br><br>Plaintiff,<br><br>**v.**<br><br>**MY CHEMICAL ROMANCE; AND LIVE NATION ENTERTAINMENT, INC.,**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 4:26-CV-01590-MJT** |

**DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER**

**REESE MARKETOS LLP**

Margaret D. Terwey
State Bar No. 24078454
margaret.terwey@rm-firm.com

Joel W. Reese
State Bar No. 00788258
joel.reese@rm-firm.com

750 Saint Paul St., Suite 600
Dallas, Texas 75201
Telephone: (214) 382-9810

**DAVIS WRIGHT TREMAINE LLP**

Peter Anderson
*Pro hac vice application forthcoming*
peteranderson@dwt.com

350 S. Grand Avenue, 27th Floor
Los Angeles, California 90071

**ATTORNEYS FOR DEFENDANT LIVE NATION ENTERTAINMENT, INC.**

# TABLE OF CONTENTS

**Page**


1. INTRODUCTION ....1

2. LEGAL STANDARD ....3

3. PLAINTIFF'S POST FACTO REQUEST FOR INJUNCTIVE RELIEF MUST BE DENIED ....4

   (a) Plaintiff's TRO Fails at the Threshold Because There is No Emergency: The Challenged Segment is Over and Is Not Part of the Upcoming Shows ....4

   (b) The Court Lacks Personal Jurisdiction Over the Defendants for Claims Arising from California Performances ....5

   (c) Plaintiff Is Unlikely to Succeed on the Merits Because the Costumes Were an Artistically Relevant Element of an Expressive Work, and Nothing in the Performance Explicitly Claimed DCC Sponsorship ....6

      *(i)* The Costumes Were Artistically Relevant to …*And Death To All Who Oppose* ....7

      *(ii)* Nothing in the Performance Explicitly Claimed Sponsorship or Endorsement ....8

      *(iii)* Plaintiff's 1979 Cases Are Easily Distinguished and Not Current Law ....9

   (d) Plaintiff Also Cannot Show Likely Confusion—Let Alone the "Particularly Compelling" Confusion Required for Expressive Works—Because the Alleged Use Was Parody ....10

   (e) Plaintiff's Dilution Claim Fails Because the Performance Parodied the DCC Rather than Identify the DCC as the Source of My Chemical Romance's Show ....12

      *(i)* The Parody and Commentary Exclusion Applies Because My Chemical Romance Did Not Use the Uniform to Designate the Source of Their Show ....13

      *(ii)* Even if the Court found a commercial element, the noncommercial-use exclusion independently applies. ....14

      *(iii)* Plaintiff Cannot Show Likely Tarnishment in any Event ....15

4. CONCLUSION ....15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255, 264 (2017) .......... 5

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235, 1245 (9th Cir. 2013) .......... 8

*Calder v. Jones*,
465 U.S. 783 (1984) .......... 5

*CHU de Quebec v. Dreamscape Development Grp.*,
2023 WL 2695092 (E.D. Tex. Mar. 29, 2023) .......... 1

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*,
886 F.2d 490, 495 (2d Cir. 1989) .......... 7, 10

*Daimler AG v. Bauman*,
571 U.S. 117, 137 (2014) .......... 5

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
604 F.2d 200 (2d Cir. 1979) .......... 9

*Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*,
600 F.2d 1184 (5th Cir. 1979) .......... 9

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095, 1099-1100 (9th Cir. 2008) .......... 7, 8

*Elvis Presley Enters., Inc. v. Capece*,
141 F.3d 188, 198 (5th Cir. 1998) .......... 10, 12

*Est. of Barré v. Carter*,
272 F. Supp. 3d 906, 945 (E.D. La. 2017) .......... 7

*ETW Corp. v. Jireh Publ'g, Inc.*,
332 F.3d 915, 927-28 (6th Cir. 2003) .......... 7, 9

*Exxon Mobil Corp. v. Bonta*,
2026 WL 413417, at *9-10 (E.D. Tex. Feb. 13, 2026) .......... 5

*Foreman v. Dallas County*,
193 F.3d 314, 323 (5th Cir. 1999) .......... 3

*Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*,
982 F.3d 280, 289 (5th Cir. 2020) .......... 10

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140, 153-59 (2023) .......... *passim*

*Janvey v. Alguire*,
647 F.3d 585, 595 (5th Cir. 2011) .......... 3

*Lyons P'ship, L.P. v. Giannoulas*,
14 F. Supp. 2d 947, 954 (N.D. Tex. 1998), *aff'd*, 179 F.3d 384 (5th Cir. 1999) .......... 11, 15

*Lyons P'ship, L.P. v. Giannoulas*,
179 F.3d 384 (5th Cir. 1999) .......... 13, 15

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894, 902 (9th Cir. 2002) .......... 8, 14

*MGFB Props., Inc. v. Viacom Inc.*,
54 F.4th 670, 681 (11th Cir. 2022) .......... 7

*Morgan v. Fletcher*,
518 F.2d 236, 240 (5th Cir. 1975) .......... 4

*Murray v. Ford Motor Co.*,
770 F.2d 461, 463 (5th Cir. 1985) .......... 1

*Powerex Corp. v. Reliant Energy Servs.*,
551 U.S. 224, 232 (2007) .......... 13

*Revell v. Lidov*,
317 F.3d 467, 473 (5th Cir. 2002) .......... 6

*Rogers v. Grimaldi*,
875 F.2d 994, 998 (2d Cir. 1989) .......... *passim*

*SEC v. Levin*,
849 F.3d 995, 1003 (11th Cir. 2017) .......... 13

*Seiferth v. Helicopteros Atuneros, Inc.*,
472 F.3d 266, 274-75 (5th Cir. 2006) .......... 5

*Sepulvado v. Jindal*,
729 F.3d 413, 417 (5th Cir. 2013) .......... 3

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
851 F.3d 440, 450 (5th Cir. 2017) .......... 10

*Sugar Busters LLC v. Brennan*,
177 F.3d 258, 269 n.7 (5th Cir. 1999) ........................................ 6

*TMI, Inc. v. Maxwell*,
368 F.3d 433, 437-38 (5th Cir. 2004) ........................................ 14

*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*,
683 F.3d 1266, 1278-79 (11th Cir. 2012) ........................................ 7

*Voting for Am., Inc. v. Steen*,
732 F.3d 382, 386 (5th Cir. 2013) ........................................ 3

*Walden v. Fiore*,
571 U.S. 277, 284-86 (2014) ........................................ 5

*Westchester Media v. PRL USA Holdings, Inc.*,
214 F.3d 658, 673 (5th Cir. 2000) ........................................ *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7, 20 (2008) ........................................ 3

**Statutes**

15 U.S.C.
§ 1116(a) ........................................ 3, 4
§ 1125(a)(1)(A) ........................................ 10
§ 1125(c)(3) ........................................ 12, 14

**Rules**

Fed. R. Civ. P. 65(b)(1)(A) ........................................ 4

## 1. INTRODUCTION

Defendant Live Nation Entertainment, Inc. ("Live Nation"), respectfully submits this opposition to the Petition for Temporary Restraining Order filed by plaintiff Pro Silver Star, Ltd. ("Plaintiff").

Prior to Live Nation's removal of this action to this Court, Plaintiff filed in the State Court a Petition for a temporary restraining Order and injunction, which the State Court declined to rule on because it was provided notice of removal to this Court. 28 U.S.C. § 1446(d); *Murray v. Ford Motor Co.*, 770 F.2d 461, 463 (5th Cir. 1985). Plaintiff's Petition, which apparently constitutes both Plaintiff's pleading and Plaintiff's application for a temporary restraining Order and injunction (Dkt. No. 1-1 at 4), does not comply with this Court's Local Rule CV-65 ("An application for a temporary restraining order or for a preliminary injunction shall be made on an instrument separate from the complaint."). That alone is grounds for denial. *See CHU de Quebec v. Dreamscape Development Grp.*, 2023 WL 2695092, at *3 (E.D. Tex. Mar. 29, 2023) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."). However, out of an abundance of caution, Live Nation respectfully submits this opposition to the Petition.

### (a) <u>Summary of Opposition</u>

This is a trademark case about a musical group's artistic expression and the First Amendment. Plaintiff Pro Silver Star, Ltd. ("Plaintiff") asks this Court to use trademark law to line edit theatrical staging at a Los Angeles concert because Plaintiff dislikes the way the show parodied one of the most famous uniforms in the United States. That request raises serious First Amendment and jurisdictional concerns. But the Court does not need to reach the merits of Plaintiff's claims now. There is no emergency—and no conduct for this Court to enjoin: those

shows ended last Saturday. For those reasons alone, the Court should deny the request for a temporary restraining order ("TRO").

Plaintiff's own Petition admits that the accused show took place at the Hollywood Bowl in California, during performances on October 21, 23, and 24, 2026. Pet. ¶¶ 2, 36–40, 52; Schechter Decl. at 1 ¶ 3. It does not allege that defendant My Chemical Romance—who Plaintiff has not served—performed the challenged show in Texas. Plaintiff's request for extraordinary relief therefore turns on two propositions it has not proved: that My Chemical Romance will repeat the segment and that the concert sequence with Dallas Cowboys Cheerleaders ("DCC")-like costumes reasonably communicates sponsorship by Plaintiff. Neither proposition survives scrutiny.

Plaintiff has adduced no evidence that the challenged staging will reappear. Nor could it provide any such evidence. Plaintiff admits that the stage shows change from performance to performance. And Defendants have confirmed that the challenged segment was part of a not-recurring three-show rock opera celebrating the October 23, 2006, release of the band's concept album, The Black Parade, and will not be part of My Chemical Romance's general tour and upcoming shows. Schechter Decl. at 2 ¶¶ 5–6.

Plaintiff's request for TRO fails for at least three independent reasons: (1) there is no emergency, (2) this Court lacks personal jurisdiction over My Chemical Romance and potentially Live Nation for claims arising from the California performances, and (3) the Lanham Act does not let a brand owner restrain expressive content that comments on DCC's iconic status in Americana. The application should be denied.

**(b) <u>Factual Background</u>**

My Chemical Romance's *...And Death To All Who Oppose* is the finale (the "Finale") of a three-part live rock opera, not a cheerleading event, sports promotion, or DCC-branded appearance. Plaintiff pleads that the Finale is a theatrical concert production celebrating the

twentieth anniversary of band's 2006 *The Black Parade* concept album. The Finale is set in a fictional dystopian nation and includes a staged firefight with a dictator, in which the dictator's soldiers in Rockette-style costumes are repelled by armed cheerleaders in DCC-like costumes. Pet. ¶¶ 2, 33, 36, 40–41; Schechter Decl. at 1–2 ¶ 4.

The challenged sequence occurred at the Hollywood Bowl on October 21, 23, and 24, 2026. Pet. ¶¶ 2, 36–40, 52; Schechter Decl. at 1 ¶ 3. Plaintiff seeks a TRO because it predicts that My Chemical Romance will repeat the segment at the two remaining Hollywood Bowl shows on October 30 and October 31, 2026. Pet. ¶¶ 34, 52–55. But those are regular concert dates, not presentations of the Finale rock opera, and the cheerleading segment is not part of the band's regular tour dates, including on October 30 and 31, 2026, as Defendants have previously informed Plaintiff. Schechter Decl. at 2 ¶¶ 5–6 & Exs. 1, 2 & 3.

## 2. <u>LEGAL STANDARD</u>

A TRO is an "extraordinary remedy." *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013). The movant must show a substantial likelihood of success, a substantial threat of irreparable harm, that the threatened injury outweighs the harm to the opposing party, and that relief would not disserve the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). Failure on any element defeats relief. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (preliminary injunction standard). A TRO preserves the status quo pending a fuller hearing; it does not award final relief or prevent speculative future injury. *Foreman v. Dallas County*, 193 F.3d 314, 323 (5th Cir. 1999). And the Lanham Act's presumption of irreparable harm arises only "upon a finding of likelihood of success on the merits." 15 U.S.C. § 1116(a).

## 3. PLAINTIFF'S POST FACTO REQUEST FOR INJUNCTIVE RELIEF MUST BE DENIED

### (a) Plaintiff's TRO Fails at the Threshold Because There is No Emergency: The Challenged Segment is Over and Is Not Part of the Upcoming Shows

A TRO movant must make a clear evidentiary showing. Speculation and attorney argument do not suffice. Fed. R. Civ. P. 65(b)(1)(A). Further, irreparable harm must be likely, imminent, and incapable of full repair through ordinary remedies. *Winter*, 555 U.S. at 22; *Janvey*, 647 F.3d at 600. "The possibility that adequate compensatory or other corrective relief will be available at a later date" weighs heavily against emergency relief. *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975). And a preliminary injunction should not issue "simply to prevent the possibility of some remote future injury." *Emerson*, 270 F.3d at 262.

Plaintiff supplies no such proof. The only allegations that purport to support a claim of urgency are paragraphs 52 through 55 of the supposedly "verified" petition which allege that My Chemical Romance is scheduled to perform on October 30 and 31, 2026. In fact, however, these paragraphs are not verified. *See* Counce Decl. (Dkt. No. 1-1) at 37 ¶ 2. Plaintiff merely speculates that the challenged sequence will appear in those shows, and "[s]peculation has no evidentiary weight." *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 673 (5th Cir. 2000).

Further, the actual evidence unambiguously establishes that the challenged performance appeared only in last week's three shows and the cheerleader sequence is not in the upcoming shows. *See* Schechter Decl. at 2 ¶ 5. That evidence eliminates any imminent injury supporting a TRO. And the Lanham Act presumption does not save Plaintiff's request for a TRO. First, that presumption is triggered only after a finding of likely success. 15 U.S.C. § 1116(a). And second, the evidence shows the conduct which Plaintiff claims is infringing is over and rebuts the presumption. *Whirlpool Corp. v. Shenzen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 546 (5th Cir. 2023).

There is no emergency or even an imminent threat and, accordingly, Plaintiff's request for a TRO must be denied.

**(b) <u>The Court Lacks Personal Jurisdiction Over the Defendants for Claims Arising from California Performances</u>**

Plaintiff does not plead general jurisdiction and, indeed, neither My Chemical Romance nor the band's members are Texans, and Live Nation is not a Texas corporation and its principal place of business is in California. So general jurisdiction does not apply. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Specific jurisdiction is claim-specific and contact-specific. A court must identify contacts that the defendant created with the forum and must connect those contacts to the claims at issue. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). The plaintiff's residence and the place where the plaintiff feels injury alone do not create jurisdiction over an out-of-state defendant. *Id.* at 289–90 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Nor may a plaintiff aggregate unrelated forum contacts to support jurisdiction over claims arising elsewhere. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006).

Plaintiff's own Petition places the challenged conduct in California. It alleges that the accused costumes appeared at the Hollywood Bowl. Pet. ¶¶ 2, 36–40, 52. It does not allege that any challenged cheerleader sequence occurred at My Chemical Romance's earlier Texas performances. Instead, Plaintiff pleads unrelated Texas contacts: The band performed in San Antonio on September 12, 2026, and at Globe Life Field in Arlington in 2025. Pet. ¶¶ 8, 14, 33. Plaintiff's claims do not arise from those alleged contacts; they unambiguously arise from the Hollywood Bowl performances.

*Exxon Mobil Corp. v. Bonta* confirms this limit. The "only" contacts that matter are "those that relate to the plaintiff's suit," and Texas jurisdiction does not arise from conduct tied to Texas

only because the plaintiff is based there. 2026 WL 413417, at *9–10 (E.D. Tex. Feb. 13, 2026). Jurisdiction may exist if, among other things, the challenged conduct itself targets Texas. *Id.* at *14–15. Plaintiff does not allege that the challenged sequence appeared in Texas, was created in Texas, or was advertised to Texans as a DCC collaboration. Plaintiff's Texas headquarters and Texas-felt injury cannot substitute for defendant-created Texas contacts. Pet. ¶¶ 12, 15–18; *see Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002). The Court should not exercise coercive emergency power over My Chemical Romance and Live Nation based on contacts unrelated to the performance the injunction would restrain.

**(c) Plaintiff Is Unlikely to Succeed on the Merits Because the Costumes Were an Artistically Relevant Element of an Expressive Work, and Nothing in the Performance Explicitly Claimed DCC Sponsorship**

Trademark law polices confusion about source. It does not let a brand owner edit art. When a mark appears inside an expressive work, courts construe the Lanham Act narrowly to avoid a collision with the First Amendment. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989). The Act reaches such a work only where the public interest in avoiding confusion outweighs the public interest in free expression. *Id.* at 999. That balance normally will not support liability unless the use has no artistic relevance to the work "whatsoever" or "explicitly misleads as to the source or the content of the work." *Id.* The costumes here clear both prongs.

The Fifth Circuit has adopted this approach. In *Westchester*, it held that a defendant's First Amendment interest in an expressive title requires a "particularly compelling" likelihood of confusion before liability may attach. 214 F.3d at 664–65 (adopting the Second Circuit's *Rogers* framework and quoting *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 n.7 (5th Cir. 1999)). The court added that where challenged speech is "at least partly literary or artistic," the preferred course is to accommodate trademark remedies to First Amendment interests. *Id.* at 672. To be sure, *Westchester* involved a magazine title, and the Fifth Circuit has not yet decided whether *Rogers*

governs marks used within the body of a work. *See Est. of Barré v. Carter*, 272 F. Supp. 3d 906, 945 (E.D. La. 2017). But the circuits that have reached the question have extended *Rogers* to expressive content. *See, e.g.*, *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) (holding that the *Rogers* approach "is generally applicable to Lanham Act claims against works of artistic expression," including parody); *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099–1100 (9th Cir. 2008) (applying *Rogers* to a strip-club trade dress depicted inside a video game); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 927–28 (6th Cir. 2003) (applying *Rogers* to a painting).

The rationale for applying *Rogers* applies with great force here. A title is a hybrid: part artistic expression, part commercial promotion. *Rogers*, 875 F.2d at 998. A costume worn for one song inside a staged narrative that is plainly satirical is not a hybrid at all. It is pure performance. If the First Amendment protects the hybrid, it protects the performance.[1]

#### *(i)* The Costumes Were Artistically Relevant to the Finale

The first Rogers prong sets a deliberately low bar. The level of relevance "merely must be above zero." *E.S.S.*, 547 F.3d at 1100. The question is whether the use has some artistic connection to the work, not whether it was the best or only choice. *See MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 681 (11th Cir. 2022) (rejecting a "necessity" gloss on artistic relevance). Uniforms qualify. The Eleventh Circuit has held that an artist's depiction of a university's football uniforms in paintings, prints, and calendars was artistically relevant. *See id.* at 680 (citing *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278–79 (11th Cir. 2012)).

---

[1] *Jack Daniel's* does not change this analysis. The Supreme Court held that the *Rogers* framework does not apply when an alleged infringer uses another's mark "as a mark"—that is, as a source identifier for the defendant's own goods. *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 153–59 (2023). Plaintiffs use of the costumes here was not as a source identifier.

Plaintiff's own Petition supplies the relevance. Plaintiff calls the DCC Uniform "an emblem of American popular culture" and its wearers "America's Sweethearts." Pet. ¶ 21. It touts the cheerleaders' 87 USO tours and a brand built on "dedication, character, and community." Pet. ¶¶ 22, 41. Then it describes the scene. Those emblems of wholesome Americana appear in a fictional dictatorship ruled by a "Grand Immortal Dictator," heroically take up rifles to defend My Chemical Romance, and are tragically shot. Pet. ¶¶ 36, 40–41. That juxtaposition is the point. The scene takes DCC—Plaintiff's own self-described icon of patriotic spectacle—as an emblem of Americana and contrasts it with an anti-American militarized dystopia. Whatever the scene says about nationalism and violence, it says through DCC, not around it. Plaintiff dislikes what it says. *See* Pet. ¶ 41. But a complaint about the message proves that a message exists.

Plaintiff all but concedes the artistic purpose. It argues that "[i]f Defendants want cheerleaders to evoke Americana," a generic cheerleader costume would do. Pet. ¶ 61. But Plaintiff's own Petition establishes that a generic costume does not carry the symbolism of the Dallas cheerleaders uniforms. That very expressive use and meaning confirms why, as the Petition puts it, Defendants "deliberately" costumed the performers to evoke the Dallas cheerleaders. Pet. ¶ 73. A deliberate evocation is an artistic choice. It satisfies the first prong.

#### ***(ii)*** **Nothing in the Performance Explicitly Claimed Sponsorship or Endorsement**

The second prong asks whether the defendant made an "explicit indication," "overt claim," or "explicit misstatement" of sponsorship. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Rogers*, 875 F.2d at 1001). Mere use of the mark is not enough. *E.S.S.*, 547 F.3d at 1100. If it were, *Rogers* would be "a nullity." *Id.* at 1099 (quoting *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002)). The inquiry also looks to what the defendant said and did,

not to how some viewers reacted. *Brown*, 724 F.3d at 1245–46 (holding that even a survey showing consumer belief in endorsement would not show that the use was explicitly misleading).

The Fifth Circuit frames this prong somewhat differently. It asks whether an artistically relevant use misleads under the ordinary likelihood-of-confusion test, but it requires that any confusion be "particularly compelling." *Westchester*, 214 F.3d at 664–65. Plaintiff loses under either formulation. Plaintiff identifies no explicit claim of sponsorship. It points to no ticket, program, credit, announcement, or advertisement naming DCC as a participant or sponsor or even mentioning the DCC. *See* Pet. ¶¶ 36–51. It notes that after the cheerleaders save the day, the frontman Gerard Way stated in the show, "Thank you, Dallas." Pet. ¶ 39. But that line names a city, not a cheer squad. Spoken in Los Angeles to performers in a fictional nation, it is a wink at the reference—not a credit line. At most it is ambiguous. And *Rogers* insulates uses with minimal artistic relevance that are "ambiguous or only implicitly misleading." *Rogers*, 875 F.2d at 1000.

Plaintiff's social-media evidence does not fill the gap. In *Rogers*, the Second Circuit held that survey evidence showing that some members of the public drew the incorrect inference of the actress's involvement was "so outweighed by the interests in artistic expression as to preclude application of the Lanham Act." *ETW*, 332 F.3d at 927 (quoting *Rogers*, 875 F.2d at 1001). Plaintiff's posts are the same kind of impact evidence. Pet. ¶¶ 42–50.

**_(iii)_ Plaintiff's 1979 Cases Are Easily Distinguished and Not Current Law**

Plaintiff invokes *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979), and *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184 (5th Cir. 1979). Pet. ¶¶ 1, 32, 58, 61. Neither changes the analysis. The Second Circuit in *Rogers* acknowledged that *Pussycat Cinema* "involved a pornographic movie with blatantly false advertising." 875 F.2d 994, 999 n.4. None of that is true here. And *Scoreboard Posters* was a

copyright case in which the court explicitly did not reach the service mark claims. 600 F.2d at 1188 n.1. The Fifth Circuit has since observed that *Scoreboard Posters* "arguably should not be cited in a trademark opinion." *Westchester*, 214 F.3d at 672 n.18.[2]

**(d) Plaintiff Also Cannot Show Likely Confusion—Let Alone the "Particularly Compelling" Confusion Required for Expressive Works—Because the Alleged Use Was Parody**

Outside *Rogers*, Plaintiff still must prove a protectable interest and a use likely to cause confusion as to source, affiliation, sponsorship, or approval. 15 U.S.C. § 1125(a)(1)(A); *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). The Fifth Circuit evaluates likely confusion through nonexclusive "digits of confusion," including the type of mark, similarity of marks, similarity of products or services, identity of purchasers, advertising channels, intent, actual confusion, and purchaser care. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020). And where First Amendment interests are at stake, the Fifth Circuit has required that the ultimate finding of confusion be "particularly compelling." *Westchester*, 214 F.3d at 665–66.

Recognition is not confusion. The Fifth Circuit has said so directly. A successful parody "weighs against a likelihood of confusion because, even though it portrays the original, it also sends the message that it is not the original and is a parody." *Elvis*, 141 F.3d at 199; *see Cliffs*

---

2 Plaintiff's fallback—that "any cheerleading costume would serve"—is the discredited alternative-avenues test by another name. Pet. ¶ 61. *Rogers* itself rejected the argument that First Amendment concerns arise only when the artist has no alternative means of expression, explaining that the "no alternative avenues" standard gives "insufficient leeway for literary expression." 875 F.2d at 998–99. The Fifth Circuit agrees in substance. *See Westchester*, 214 F.3d at 671–72 (faulting reliance on the "reasonable alternative avenues" approach, which "bears a tenuous relation" to the interests trademarks protect, when reviewing a trademark injunction against a magazine title).

*Notes*, 886 F.2d at 494; *Louis Vuitton*, 507 F.3d at 260. As the *Lyons* trial court put it, no other character "could . . . be substituted . . . to achieve the same effect." 14 F. Supp. 2d at 953.

Nor does Plaintiff's surprise-appearance theory fare any better. Plaintiff says DCC makes surprise appearances at concerts. Pet. ¶ 26. But those are cameos with pop and country stars, not armed insurgents in a fictional dictatorship. Pet. ¶¶ 26, 40–41. The context on stage told the audience this was My Chemical Romance's story, not DCC's show.

Plaintiff's own cited press sources make the same point. The Petition cites coverage referring to "fake" Dallas Cowboys Cheerleaders, "Dallas Cowboys-esque" cheerleaders, and a My Chemical Romance stunt that "confused and delighted" fans. Pet. ¶¶ 37, 40, 50. Those descriptions do not show sponsorship confusion. They show that observers understood the performance as an allusive, exaggerated, theatrical reference within a My Chemical Romance show.

Plaintiff's cited social-media examples are not enough to carry its burden. Some viewers used shorthand like "Dallas Cowboys Cheerleaders" because they recognized the reference. Pet. ¶¶ 42–50. But shorthand recognition on social media is not the same thing as a belief that Plaintiff sponsored the Finale. Courts evaluating parody and expressive use must ask whether consumers are likely to believe the mark owner sponsored or approved the defendant's work—not merely whether the audience recognized what the work was referencing. *See Louis Vuitton*, 507 F.3d at 260, 266–67.

*Westchester* shows what "particularly compelling" confusion looks like, and this record is nothing like it. There, the Fifth Circuit upheld a confusion finding after a full trial because the magazine targeted the trademark owner's customers through the same retail outlets, a survey and anecdotal evidence showed actual confusion, and the publisher intended to trade on the owner's

goodwill. 214 F.3d at 667–68. Plaintiff offers no survey. Its intent theory is that Defendants meant to evoke DCC—which is what parody does. Pet. ¶ 73. But a good-faith intent to parody "is not an intent to confuse," and it makes the intent digit "a nonfactor." *Elvis*, 141 F.3d at 203. And its actual-confusion evidence is a handful of posts from viewers who recognized the reference. Pet. ¶¶ 42–50. Even *Westchester*, on its far stronger record, vacated the broad injunction and remanded for consideration of narrower relief. 214 F.3d at 673–75.

That distinction defeats Plaintiff's motion. Plaintiff can show, at most, that the reference landed. It cannot show that the audience likely believed DCC authorized a dystopian My Chemical Romance firefight. That is the whole point. The joke requires the audience to know the original—and to know this was not it.

**(e) Plaintiff's Dilution Claim Fails Because the Performance Parodied the DCC Rather than Identify the DCC as the Source of My Chemical Romance's Show**

Dilution law protects famous marks against blurring and tarnishment. But Congress excluded whole categories of use from dilution liability, including parody, commentary, and noncommercial use. 15 U.S.C. § 1125(c)(3); *Jack Daniel's*, 599 U.S. at 147–48. Two exclusions apply here, parody and noncommercial use. Even if neither did, Plaintiff could not prove likely tarnishment on this record—indeed, in *…And Death To All Who Oppose* the cheerleaders are heroines who help save the day. And the restraint Plaintiff seeks reaches far beyond any dilution theory. Parody can even "weigh heavily enough to overcome a majority of the digits of confusion." *Elvis*, 141 F.3d at 199.

*Lyons* is on all fours with this case.[3] There, the performer known as the Famous Chicken staged a routine in which he would "flip, slap, tackle, trample, and generally assault" a Barney look-alike. 179 F.3d at 386. The court held that the routine was "clearly" parody. Its humor "came from the incongruous nature of such an appearance, not from an attempt to benefit from Barney's goodwill," and the Chicken's conduct toward Barney was "always . . . antagonistic." *Id.* at 388. The court affirmed summary judgment for the performer, holding that the trial court properly read every digit of confusion in light of the parody. *Id.* at 389–90. My Chemical Romance's use of the costume is similarly parody, contrasting DCC's "America's Sweethearts" image with a post-apocalyptic war.

Further, "when a consumer encounters the use of a trademark in a setting that is clearly a parody, the strength of the mark may actually make it easier for the consumer to realize that the use is a parody." *Id.* at 389. Plaintiff calls the DCC Uniform "an emblem of American popular culture." Pet. ¶ 21. That fame is why the audience got the joke. Nor may Plaintiff score the digits one by one, as though the parody were not there. The Fifth Circuit called that approach "absolutely absurd" because it "would all but require a trial for any trademark suit where the conduct was a parody." *Id.* at 389.

**(i) The Parody and Commentary Exclusion Applies Because My Chemical Romance Did Not Use the Uniform to Designate the Source of Their Show**

The Act excludes any fair use of a famous mark "in connection with . . . parodying, criticizing, or commenting upon the famous mark owner or [its] goods or services." 15 U.S.C. §

[3] While the *Lyons* appellate decision dealt with likelihood of confusion, "identical words and phrases within the same statute should normally be given the same meaning." *SEC v. Levin*, 849 F.3d 995, 1003 (11th Cir. 2017) (quoting *Powerex Corp. v. Reliant Energy Servs.*, 551 U.S. 224, 232 (2007)).

1125(c)(3)(A)(ii). The exclusion has one carve-out. It does not apply when the defendant uses the mark "as a designation of source for the person's own goods or services." *Id.* § 1125(c)(3)(A); *Jack Daniel's*, 599 U.S. at 147–48. Defendants make no such use. My Chemical Romance did not name its tour, its tickets, or its merchandise after DCC. *See* Section IV.D.The costumes appeared for one song inside a staged narrative. Pet. ¶¶ 36–41. They commented on what DCC stands for: Plaintiff's self-described "emblem of American popular culture," recast in a militarized dystopia. Pet. ¶¶ 21, 36, 40–41. That is commentary on "the famous mark owner." 15 U.S.C. § 1125(c)(3)(A)(ii).

Plaintiff's own theory confirms the point. It alleges that Defendants used the costumes "to identify their performers as DCC." Pet. ¶ 79. A costume that tells the audience who a character is meant to evoke refers to the mark owner. It does not designate who produced the concert.

***(ii)*** **Even if the Court found a commercial element, the noncommercial-use exclusion independently applies.**

The Act separately excludes "[a]ny noncommercial use of a mark." 15 U.S.C. § 1125(c)(3)(C). *Jack Daniel's* held only that this exclusion cannot shelter parody that is used as a source identifier. 599 U.S. at 162–63.

The Fifth Circuit has not identified a general standard for "noncommercial use" of a trademark. *See TMI, Inc. v. Maxwell*, 368 F.3d 433, 437–38 (5th Cir. 2004) (citing *Mattel,* 296 F.3d at 903). The Ninth Circuit reads "noncommercial use" to mean speech that is not purely commercial—speech that does more than propose a commercial transaction. *Mattel*, 296 F.3d at 905–06.

Here, Defendants' speech does more than propose a commercial transaction. As such, Plaintiff's dilution claim is barred by the noncommercial-use exclusion.

### *(iii)* Plaintiff Cannot Show Likely Tarnishment in any Event

Even apart from the exclusions, Plaintiff must prove that the challenged use is likely to harm its mark's reputation. It says only that the scene placed the uniform in a violent setting. Pet. ¶ 41. It offers no survey, no expert, and no evidence that anyone thinks less of DCC because MCR's fictional insurgents wore its colors. That gap is fatal.

The *Lyons* trial court rejected tarnishment on facts close to these. The routine did not "portray [Barney] in an unwholesome or unsavory context." *Lyons P'ship, L.P. v. Giannoulas*, 14 F. Supp. 2d 947, 954 (N.D. Tex. 1998), *aff'd*, 179 F.3d 384 (5th Cir. 1999). "What makes the act funny," the court explained, "is that Barney is such a wholesome, good character and the putative Barney acts like an evil alter ego." *Id.* The Fifth Circuit affirmed summary judgment on the Lanham Act claims—dilution among them—though its written analysis addressed only confusion. *Lyons*, 179 F.3d at 387, 390 & n.1.

## 4. CONCLUSION

Plaintiff's request for a temporary restraining order fails for at least three independent reasons. *First* and perhaps foremost, there is no emergency or imminent threat because the cheerleader sequence is performed only in last week's …*And Death To All Who Oppose* shows and not in the upcoming or other My Chemical Romance tour dates. *Further*, the challenged performances occurred in California, not Texas, and this Court does not have personal jurisdiction over the Defendants. *Finally*, the Lanham Act does not allow a brand owner to enjoin an expressive concert sequence merely because it recognizes itself in the reference.

The Court should deny Plaintiff's application for a temporary restraining order.

Respectfully submitted,

By: /s/ Margaret D. Terwey

**REESE MARKETOS LLP**

Margaret D. Terwey
State Bar No. 24078454
margaret.terwey@rm-firm.com

Joel W. Reese
State Bar No. 00788258
joel.reese@rm-firm.com

750 Saint Paul St., Suite 600
Dallas, Texas 75201
Telephone: (214) 382-9810

**DAVIS WRIGHT TREMAINE LLP**

Peter Anderson
*Pro hac vice application forthcoming*
peteranderson@dwt.com

350 S. Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800

**ATTORNEYS FOR DEFENDANT LIVE NATION ENTERTAINMENT, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system which will make this document available to all counsel of record for viewing and downloading from the ECF system.

Dated: October 29, 2026 */s/ Margaret D. Terwey*